[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 182.]

WEIKER, APPELLANT, *v.* MOTORISTS MUTUAL INSURANCE COMPANY, APPELLEE.

[Cite as *Weiker v. Motorists Mut. Ins. Co.*, 1998-Ohio-373.]

*Insurance—Motor vehicles—Underinsured motorist coverage—Wrongful death beneficiary not precluded from underinsured motorist coverage because of failure to notify insurer of a wrongful death settlement.*

(No. 96-2095—Submitted February 3, 1998—Decided June 17, 1998.)

APPEAL from the Court of Appeals for Ottawa County, No. OT-96-012.

————————————

{¶ 1} On August 14, 1993, James N. Pettit was killed in an automobile collision caused by a negligent motorist. April S. Pettit, his daughter, was appointed as administrator of his estate by the Fulton County Probate Court. As administrator and personal representative of the beneficiaries, April entered into a settlement with the tortfeasor for the wrongful death of the decedent, pursuant to R.C. 2125.01 *et seq.,* which was approved by the probate court in September 1994. The release was made by the administrator on behalf of "the other heirs and next of kin of James N. Pettit." James Pettit's children, as well as his mother, consented in writing to the distribution of the proceeds. The probate court approved the wrongful death settlement in the amount of $250,000, the liability limit of the tortfeasor's policy.

{¶ 2} Joyce Ann Weiker, appellant, was the sister of the decedent, James Pettit. She was never notified by the court that the probate of James Pettit's estate had commenced. Through conversations with her niece April and her mother, Weiker was aware of the probate proceedings, but thought that they were only for the benefit of her mother and brother's children. Joyce's mother told her that according to the administrator's lawyer, Joyce did not have a claim. Furthermore,

Weiker was never aware that the probate court eventually approved a proposed settlement between the administrator and the tortfeasor.

{¶ 3} Weiker eventually consulted an attorney and realized that she could present a claim for wrongful death. In June 1995, she filed a motion with the probate court to vacate the release as to her and her brother, Donald Pettit. However, the probate court denied the motion on August 4, 1995.

{¶ 4} Weiker then submitted a claim to her own insurance company, Motorists Mutual Insurance Company ("Motorists"), appellee, for underinsured motorist benefits, since she failed to receive a portion of the wrongful death settlement. Weiker had two policies with her insurer, one personal, and the other, commercial. When Motorists failed to acknowledge coverage, Weiker filed a complaint against Motorists seeking underinsured motorist coverage, alleging that she had suffered the loss of society and companionship of her brother, the decedent, and had experienced severe emotional anguish over his death.

{¶ 5} Both parties filed motions for summary judgment. The trial court granted appellee's summary judgment motion, finding that Weiker's rights were extinguished by the wrongful death settlement, and that she failed to protect her insurer's subrogation rights by not promptly notifying Motorists of her claim until after the settlement had been approved by the probate court. The court of appeals affirmed.

{¶ 6} The cause is now before this court upon the allowance of a discretionary appeal.

_____

*Rogers & Godbey Co., L.P.A.,* and *George C. Rogers*, for appellant.

*Jones & Bahret Co., L.P.A., Robert J. Bahret* and *Keith J. Watkins*, for appellee.

_____

**FRANCIS E. SWEENEY, SR., J.**

{¶ 7} The issue in this is case is whether a wrongful death beneficiary is precluded from underinsured motorist coverage because of her failure to notify her insurer of a proposed wrongful death settlement. Because we find that appellant did not violate the terms of her personal insurance policy, she is entitled to underinsured motorist coverage from her insurance provider.

{¶ 8} Weiker's personal automobile insurance policy with Motorists includes uninsured/underinsured motorist coverage provisions, including a subrogation clause, which state, "We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury caused by an accident. * * * A person seeking Uninsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the insured and the insurer * * * and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such uninsured motor vehicle."

{¶ 9} R.C. 3937.18 provides that automobile insurance carriers must offer uninsured and underinsured motorist coverage to their policy holders. Pursuant to R.C. 3937.18(E), the inclusion of a subrogation clause in insurance contracts providing underinsured motorist coverage is a valid and enforceable precondition to the duty to provide such coverage. *McDonald v. Republic-Franklin Ins. Co.* (1989), 45 Ohio St.3d 27, 29, 543 N.E.2d 456, 459; *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 521 N.E.2d 447, paragraph four of the syllabus.

{¶ 10} R.C. 2125.01 *et seq.* establishes the procedures governing all wrongful death actions in Ohio. It provides that "an action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent * * * and for the exclusive benefit of the other next of kin of the decedent."

R.C. 2125.02(A)(1). The establishment of a personal representative in a wrongful death action promotes judicial economy by combining all potential claims into a single action. *Ramsey v. Neiman* (1994), 69 Ohio St.3d 508, 511, 634 N.E.2d 211, 213. The personal representative is presumed to act in the best interests of the beneficiaries, the real parties in interest. *Id.*

{¶ 11} Motorists argues that because Weiker did not notify it of the proposed settlement, Weiker failed to protect its subrogation rights and materially breached the terms of her insurance contract. The court of appeals below, relying on *Love v. Nationwide Mut. Ins. Co.* (1995), 104 Ohio App.3d 804, 663 N.E.2d 407, agreed, holding that a beneficiary in a wrongful death action is barred from seeking underinsured motorist benefits from his or her own policy after the administrator had settled all wrongful death claims and released the tortfeasor from further liability.

{¶ 12} However, Weiker claims that she did not violate the specific terms of the insurance contract's notification clause. The explicit language of the contract states that there must be notification of a "tentative settlement between the *insured* and the insurer of [the] vehicle," so that Motorists could preserve its subrogation rights. (Emphasis added.) Since Weiker was not a named party to the agreement, did not sign the agreement, and never received any proceeds from the settlement, she argues that the tentative settlement agreement between the administrator of Pettit's estate and the tortfeasor's insurer was not an agreement between the *insured* and the tortfeasor's insurer. Moreover, she asserts that she was not even aware of the existence of the agreement until after it was executed and approved by the probate court.

{¶ 13} We agree with appellant that she did not violate the notification provision of her personal policy. We find *Gibson v. State Farm Mut. Auto. Ins. Co.* (Aug. 22, 1997), Clark App. No. 95CA107, unreported, 1997 WL 476686, to be persuasive in the case *sub judice*. In that case, Gibson presented an underinsured

4

motorist claim to her insurance company after the executor of her deceased father's estate had settled the wrongful death claim. Gibson's policy required that there would be no coverage "for any insured who, without our written consent, settles with any person or organization who may be liable for the bodily injury." State Farm rejected the claim on the ground that the settlement and release of the tortfeasor constituted a material breach of the policy. However, the court of appeals held that under the specific language of her policy, there was no breach of the settlement notification and consent provisions of the insurance contract, since the personal representative who entered into the settlement was not the "insured" under the policy. The *Gibson* court stated, "We decline to glean from these cases [cited by State Farm in support] the blanket proposition that settlement by an insured's legal representation [*sic*] automatically disentitles the insured to underinsurance coverage irrespective of the actual terms of the contract." *Id.*

{¶ 14} As in *Gibson*, the language of Weiker's personal policy specifically requires notification of any "tentative settlement between the *insured* and the insurer of [the] vehicle." (Emphasis added.) Since Weiker was not an insured who entered into a settlement agreement, she did not violate the explicit terms of the contract. "Words and phrases used in an insurance policy must be given their natural and commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined. [Citations omitted.] The insurer, having prepared the policy, must also be prepared to accept any reasonable interpretation, consistent with the foregoing, in favor of the insured." *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 167-168, 24 O.O.3d 274, 275-276, 436 N.E.2d 1347, 1348.

{¶ 15} Even if the language in Weiker's policy were to be considered ambiguous, "where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer

and liberally in favor of the insured." *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 211, 519 N.E.2d 1380, 1383.

{¶ 16} The court of appeals below found that Weiker was precluded from recovering underinsured motorists benefits because she had actual notice of the probate proceedings and the proposed settlement. On the contrary, although Weiker was aware that probate proceedings were being pursued, she never realized that the personal representative was acting on her behalf, and was never made aware of the proposed settlement on behalf of the next of kin until after it was approved by the probate court.

{¶ 17} Motorists argues that under *McDonald* and *Bogan*, a valid subrogation clause requiring notification is enforceable. However, *McDonald* and *Bogan* involved situations where the insured themselves signed away their insurer's subrogation rights. In Weiker's case, the personal representative settled the wrongful death action without her knowledge. Unlike the case in either *McDonald* or *Bogan*, Weiker did not agree to the settlement in this case and took no affirmative steps to destroy Motorists' subrogation rights. Thus, she should not be precluded from asserting her right to underinsured motorist coverage.

{¶ 18} Therefore, we hold that appellant is entitled to assert a claim for underinsured motorist coverage under her personal insurance policy.[1] The court of appeals' judgment is reversed, and the cause is remanded to the trial court for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

DOUGLAS, RESNICK and PFEIFER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

---

1. Weiker concedes that her damages do not exceed $100,000 and that if she is entitled to coverage under her personal automobile policy, her claim under her commercial automobile policy would be moot.

_____

**COOK, J., dissenting.**

{¶ 19} I respectfully dissent.

{¶ 20} In *McDonald v. Republic-Franklin Ins. Co.* (1989), 45 Ohio St.3d 27, 29, 543 N.E.2d 456, 459, and *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 521 N.E.2d 447, paragraph four of the syllabus, this court interpreted R.C. 3937.18(E) to mean that "a subrogation clause is reasonably includable in contracts providing underinsured motorist insurance. Such a clause is therefore both a valid and enforceable precondition to the duty to provide underinsured motorist coverage." The statute is unambiguous and creates no exception for wrongful death beneficiaries.

{¶ 21} In reaching its conclusion, the majority finds ambiguity not in the statute, but in the subrogation provision of the insurance policy, holding that Weiker was not required to notify Motorists of a tentative settlement between her wrongful death personal representative and the tortfeasor's insured. The majority bases this conclusion on the policy language requiring Weiker to notify Motorists of any "tentative settlement between the *insured* and the insurer of [the] vehicle." (Emphasis added in majority opinion.) Presumably because Weiker did not sign the settlement or receive proceeds under its terms, the majority concludes that there was no tentative or ultimate settlement between Weiker and the tortfeasor's insurer.

{¶ 22} The law in Ohio has long held that, in wrongful death actions, the personal representative is merely a nominal party and the statutory beneficiaries are the real parties in interest. *E.g.*, *Burwell v. Maynard* (1970), 21 Ohio St.2d 108, 50 O.O.2d 268, 255 N.E.2d 628. Pursuant to R.C. 2125.02(C), the personal representative had authority to enter into a settlement with the defendant subject only to court approval. There was no requirement that the wrongful death beneficiaries agree to the terms of the settlement, or that the settlement individually name the wrongful death beneficiaries that it is intended to cover. Furthermore,

because the statutory beneficiaries are the real parties in interest to a wrongful death action, this court has consistently held that they are subject to principles of *res judicata*, amenable to claims of contributory negligence, and are bound by a general release. *Burwell*, 21 Ohio St.2d at 111, 50 O.O.2d at 270, 255 N.E.2d at 629-630. Accordingly, Weiker was bound by her personal representative's settlement.

{¶ 23} In light of the clear and long-standing law on this issue, the subrogation provision in Weiker's policy contains no ambiguity. We presume that the parties to a contract adopt the terms of their bargain in reliance on the applicable law. See *Middletown v. Ferguson* (1986), 25 Ohio St.3d 71, 78, 25 OBR 125, 131, 495 N.E.2d 380, 386. Both R.C. Chapter 2125 and the cases interpreting that statute make it clear that a personal representative's actions in pursuing a wrongful death claim are made on behalf of the statutory beneficiaries—who in this case included Weiker. Accordingly, the wrongful death settlement was, in fact, between Weiker (among others) and the tortfeasor's insured. By failing to notify Motorists of the proposed wrongful death settlement, Weiker failed a condition precedent to Motorists' coverage obligation and should not be permitted to recover.

{¶ 24} Based on the foregoing, I would affirm the judgment of the court of appeals.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing dissenting opinion.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 25} I disagree with the majority's interpretation of the facts and case law cited to justify Weiker's entitlement to underinsured motorist ("UIM") coverage in this case. Weiker's wrongful death claim arose under R.C. 2125.01. That law provides that the claim must be brought in the name of a personal representative on behalf of all those covered by the statute. April S. Pettit, Weiker's niece, who was appointed the administrator of Weiker's brother's estate, successfully prosecuted a

wrongful death action. Weiker did not challenge the wrongful death settlement or its approval by the probate court *although she would have statutorily been entitled to claim a portion of the proceeds as next of kin* under R.C. 2125.02(A)(1).

{¶ 26} Instead, two years after the settlement, Weiker first notified Motorists Mutual Insurance Company of the loss and made a claim under her policy for UIM benefits. Weiker was required under her policy to promptly notify Motorists of a loss, and also to promptly notify Motorists of any tentative settlement with the tortfeasor so that Motorists would have an opportunity to protect its subrogation rights. This court has long recognized that a subrogation clause is a valid and enforceable precondition to the duty to provide underinsured motorist coverage. *McDonald v. Republic-Franklin Ins. Co.* (1989), 45 Ohio St.3d 27, 543 N.E.2d 456; *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 521 N.E.2d 447, paragraph four of the syllabus.

{¶ 27} The facts are undisputed that Weiker knew that she had incurred a loss with the death of her brother. Weiker lived with her mother and talked with Pettit, the personal representative, on a regular basis. Weiker admits that she was aware of the probate proceeding, and that her mother and her brother's children had pending claims related to her brother's death. She also admits that it occurred to her that she may have a claim for damages but she chose not to contact any attorney to inquire about it because she did not want to incur the costs of retaining an attorney. In her deposition, Weiker testified:

"A. [M]y mother said that she had mentioned it [a possible claim] to [the attorney for the estate] * * * and when he told her that — the way she understood it we didn't have a claim, so I thought why go to the expense, you know, if I don't have a claim. I mean a lawyer should know. If I'd have got the other reaction, sure, I would have went and gotten an attorney and done something but, you know, there was nothing there for me to go see the attorney because the way I took it I didn't have a claim.

"Q.     All right.   Then if I'm hearing you correctly now, the situation is that while it may have occurred to you, you said to yourself there is really no point?

"A.     Right."

{¶ 28} Weiker had a duty to investigate whether she had a claim under the wrongful death statute.   Ignorance of the law is no justification for sitting upon one's legal rights.   Lack of knowledge of a claim is not a  legal defense for failure to timely file a claim.   Had Weiker simply read the wrongful death statute or inquired of an attorney, when she was already aware that others in her family had asserted claims, she would have discovered her rights.

{¶ 29} Weiker also had duties under the policy—just as the insurer had duties—that must be fulfilled for the policy to be enforced and coverage provided. She had the responsibility to timely notify Motorists in order to make a claim under her policy for UIM benefits.   Coverage is not an absolute right merely because Weiker paid her premiums; she must also fulfill her obligations under the contract. Here, she simply elected to take no action to file a claim or even to investigate her own legal rights.

{¶ 30} An insurer cannot be expected to know or to discover when an insured suffers a loss.   It is the insured's duty to notify his or her insurer, and Weiker did not.   When Motorists was notified of the loss, the wrongful death action had long been settled.   Motorists had no opportunity to protect its subrogation rights. "[A] right of subrogation, the protection of which is a precondition to underinsured motorist coverage, is a full and present right in and of itself wholly independent of whether a later judgment obtained by use of such right will be reduced to collection from the tortfeasor.   Such right constitutes a 'real and existing' right at any time the injured insured is in a position to release a liable party from its liability." *Bogan*, 36 Ohio St.3d at 31, 521 N.E.2d at 455.

{¶ 31} An insured who destroys his or her insurer's subrogation rights without the insurer's knowledge does so at his or her own peril.   *McDonald*, 45

Ohio St.3d at 31, 543 N.E.2d at 460. It is immaterial that the probate court may not have awarded Weiker any of the proceeds from the wrongful death settlement since she was not in the class of persons presumed to have suffered damages by reason of the wrongful death. R.C. 2125.02(A)(1).

{¶ 32} The majority concludes that because Weiker was not a part of the wrongful death settlement, the settlement agreement was not between Weiker and the tortfeasor's insurer; therefore, Weiker's failure to notify Motorists of the settlement did not violate policy provisions. However, Weiker's opportunity to assert a wrongful death claim was exclusively through the personal representative of the decedent. Only the personal representative of the decedent may present the wrongful death claim on behalf of all beneficiaries. *Burwell v. Maynard* (1970), 21 Ohio St.2d 108, 50 O.O.2d 268, 255 N.E.2d 628; *Kyes v. Pennsylvania Rd. Co.* (1952), 158 Ohio St. 362, 49 O.O. 239, 109 N.E.2d 503; *Sabol v. Pekoc* (1947), 148 Ohio St. 545, 36 O.O. 182, 76 N.E.2d 84.

{¶ 33} The majority's extremely narrow reading of the policy language is illogical. By virtue of R.C. 2125.02(C), the only named person in any wrongful death settlement agreement will be the decedent's personal representative. Unless the *insured* is designated as the personal representative for purposes of a wrongful death action, the settlement agreement will never be in the name of the insured. The personal representative must be the nominal party. Consequently, according to the majority's analysis, even an insured who is a party to a wrongful death settlement may also apply for UIM benefits unless that insured was named the personal representative in the wrongful death action. This conclusion is contrary to the policy terms and may allow a double recovery by an insured. It also renders meaningless the insurer's right to subrogation.

{¶ 34} Weiker sat on her rights. She did not satisfy the preconditions necessary to obtain UIM coverage under her insurance policy. Weiker had sufficient knowledge about the probate proceeding to cause her to inquire about her

rights and, at a minimum, put Motorists on notice of the loss. If Weiker had exercised her rights against the tortfeasor through the decedent's personal representative, whether or not the probate court would have approved a distribution to her, Weiker would have fulfilled her obligations to Motorists to protect its subrogation rights against the tortfeasor. Had Motorists denied coverage at that time, Weiker still would have satisfied *her* duties under the policy and her position today would be different.

{¶ 35} Motorists should not be required to provide coverage when Weiker's failure to meet policy requirements prejudiced Motorists' subrogation rights. For these reasons, I respectfully dissent and would affirm the judgment of the court of appeals.

MOYER, C.J., concurs in the foregoing dissenting opinion.

_____