OPINION
Plaintiff-appellant, Carol Atkinson, appeals from the February 8, 2001 judgment of the Franklin County Court of Common Pleas entering a declaratory judgment in favor of defendant-appellee, Motorists Mutual Insurance Company, that appellant was not entitled to recover uninsured motorist benefits in connection with the death of her brother, James B. Ross. For the reasons that follow, we affirm.
On March 15, 2000, appellant brought an action for declaratory judgment seeking underinsured motorist insurance coverage under her personal auto policy with appellee. Appellee filed an answer and counterclaim for declaratory judgment on May 19, 2000. The action arose out of a fatal highway accident that occurred on November 30, 1995, in which appellant's brother was killed. Both parties moved for summary judgment on the basis of stipulated facts. The following facts are taken from the stipulations filed by the parties in the trial court and the pertinent language from appellee's policy of insurance.
On November 30, 1995, appellant's brother, James B. Ross, died as a direct result of injuries he sustained in a motor vehicle accident that occurred on that date on State Route 29 in Champaign County, Ohio ("the accident"). Other drivers involved in the accident were James B. Horn ("Horn") and Denis M. Armstrong ("Armstrong"). Both Horn and Armstrong were negligent in a manner that proximately caused the accident. Ross was not negligent in any way.
At the time of the accident, Horn was insured by a policy of insurance written by Trinity Universal Insurance Company ("Trinity"). The Trinity policy included coverage for liability to third persons and had liability limits of $100,000. At the time of the accident, Armstrong was driving a tractor-trailer in the course of his employment for Transmobile, Inc. ("Transmobile"). Transmobile was insured by a policy of insurance written by Liberty Mutual Insurance Company ("Liberty"). The Liberty policy included coverage for liability to third persons and had liability limits of at least $1 million. Armstrong qualified as an "insured" under the Liberty policy.
Ross was survived by the following next-of-kin: RaShel L. Ross (wife); Joshua B. Ross (son); James Brandon Ross (son); Herbert Ross (father); Dorothy Ross (mother); Ann Garrison (sister); Carol Atkinson (sister); and Tony Ross (brother). Ross's surviving spouse, RaShel L. Ross was appointed as the Administrator of his Estate by the Probate Court of Shelby County, Ohio (Case No. 95EST 293). As she was authorized to do under Ohio law, RaShel L. Ross, in her capacity as Administrator of the Estate of James B. Ross, made claims for the wrongful death of James B. Ross against Horn, Armstrong and Transmobile. Acting on behalf of Horn, Trinity eventually offered to settle the estate's wrongful death claim for $100,000, the limit of the policy that insured Horn, in exchange for a full release in favor of Horn. RaShel L. Ross, in her capacity as Administrator of the Estate of James B. Ross, accepted that offer. The Probate Court of Shelby County, Ohio, approved that settlement. With the consent of all next-of-kin and the approval of the Shelby County Probate Court, the net proceeds of that settlement were distributed totally to RaShel L. Ross, Joshua B. Ross and James Brandon Ross, the surviving spouse and surviving sons of James B. Ross. All settlement documents, including the release, were executed by RaShel L. Ross, in her capacity as Administrator of the Estate of James B. Ross.
Acting on behalf of Armstrong and Transmobile, Liberty eventually offered to settle the estate's wrongful death claim on a "structured" basis in exchange for a full release in favor of Armstrong and Transmobile. RaShel L. Ross, in her capacity as Administrator of the Estate of James B. Ross, accepted that offer. The cost of the structured settlement to Liberty and the present value of the structured settlement to the Ross Estate was $250,000. The Probate Court of Shelby County, Ohio, approved that structured settlement. With the consent of all next-of-kin and the approval of the Shelby County Probate Court, the net proceeds of that settlement were distributed totally to RaShel L. Ross, Joshua B. Ross and James Brandon Ross, the surviving spouse and surviving sons of James B. Ross. All settlement documents, including the release, were executed by RaShel L. Ross, in her capacity as Administrator of the Estate of James B. Ross.
On the date of the accident, appellant, Carol Atkinson, was the named insured on a policy of personal auto insurance (Policy No. 5405-06-384617-07A) issued to her by appellee, Motorists Mutual Insurance Company ("Motorists"). James B. Ross does not qualify as an "insured" under that policy. The Motorists policy provides uninsured motorists coverage with limits of $50,000 per person subject to the terms, limitations and exclusions contained in the policy.
The uninsured motorist endorsement to appellant's personal auto policy includes the following pertinent language:
 A. We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle. We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements. [Emphasis added.]
On January 25, 2000, the trial court granted appellee's motion for summary judgment finding that appellant was not entitled to underinsured motorist coverage under her own policy with appellee because the exhaustion clause contained in appellant's policy had not been satisfied. It is from the trial court's February 8, 2001 judgment entry from which this appeal is taken.
On appeal, appellant has assigned as error the following:
ASSIGNMENT OF ERROR NO. 1
 The trial court committed prejudicial and reversible error in denying appellant's right to proceed against appellee for underinsured motorist coverage by ruling that the exhaustion clause in appellee's policy had not been satisfied on the grounds that appellant had consented to the settlement of the claim against the tortfeasor.
ASSIGNMENT OF ERROR NO. 2
 The trial court committed prejudicial and reversible error by using appellee's exhaustion clause to limit appellant's underinsured motorist coverage, because the availability language found in R.C. § 3937.18(A)(2) is controlling on the issue of coverage, not the exhaustion language in appellee's policy, since appellant had no claim against the tortfeasor by which to exhaust the limits of the liability policy.
In her first assignment of error, appellant argues that the exhaustion clause in her policy is not applicable since appellant never consented to the settlement of the wrongful death claim against the tortfeasor. It is undisputed that the $350,000 settlement to the Ross estate did not exhaust the tortfeasors' combined liability coverage of $1.1 million. However, none of that settlement was distributed to appellant, and appellant, as next-of-kin of the decedent, only consented to the distribution of the $350,000 settlement, which the Shelby County Probate Court awarded to the surviving spouse and minor sons of the decedent.
In support of her argument, appellant cites to the case of Weiker v. Motorists Mut. Ins. Co. (1998), 82 Ohio St.3d 182. As in the instant case, the plaintiff in Weiker was the sister of the decedent who neither consented to the settlement with the tortfeasor nor received any payment from that settlement. Id. at 182-183. In that case, the Ohio Supreme Court held that a wrongful death beneficiary who did not notify her insurer of a proposed wrongful death settlement did not violate the notification provision of her personal policy. The court read the language of the policy to require notification of any "`tentative settlement between the insured and the insurer of [the] vehicle.'" (Emphasis sic.) Id. at 185. Since Weiker was not an insured who entered into a settlement agreement, she did not violate the explicit terms of the contract. Id.
We do not find Weiker persuasive in the instant case, because Weiker was decided based on the specific language of the plaintiff's personal policy. A fair reading of Weiker does not imply a blanket exception to the application of a notification provision (or, by analogy, an exhaustion clause) for wrongful death beneficiaries. Rather, words and phrases used in an insurance contract must be given their natural and commonly accepted meaning, to the end that a reasonable interpretation of the contract may be determined. Id.
The Ohio Supreme Court has stated "[w]e do not mean to suggest by the foregoing that an injured party may, voluntarily or otherwise, abandon his claim against the tortfeasor or his insurer and so proceed directly against the underinsured motorist insurer. The exhaustion clause, as construed herein, is a valid precondition to coverage under such policy." (Emphasis added.) Bogan v. Progressive Cas. Ins. Co. (1988),36 Ohio St.3d 22, 28. (Emphasis added.) In the instant case, the exhaustion clause is written in the passive voice, and refers to payment of coverage "only after the limits of liability * * * have been exhausted by payment of judgments or settlements." It makes no reference to the insured agreeing to the settlement or receiving any proceeds from the settlement. Thus, although appellant did not personally agree to the settlement in this case, the personal representative of the decedent did. The personal representative in a wrongful death action is presumed to act in the best interests of the beneficiaries, the real parties in interest. Weiker, at 184. Thus, the personal representative's failure to exhaust the tortfeasor's liability limits bars appellant from obtaining underinsured motorist coverage under her own policy with appellee. The first assignment of error is not well-taken and is overruled.
In her second assignment of error, appellant argues that the exhaustion clause in her policy is not applicable because it conflicts with the "available for payment" language contained in R.C. 3937.18(A)(2). Specifically, that statute provides:
 Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for insureds thereunder for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the under insured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured. [Emphasis added.]
Appellant contends that, because the net proceeds of the settlement were distributed to the decedent's surviving spouse and sons, none of the limits of the tortfeasor's liability insurance policy were "available for payment" to appellant and, therefore, she is entitled to the full amount of coverage from her underinsurance motorist policy with appellee. Appellant also argues that the word "exhaustion" never appears in the statute.
The Ohio Supreme Court has addressed that argument in Bogan, and rejected that reasoning. In Bogan, the court acknowledged that the term "exhaust" is not found in R.C. 3937.18(A)(2). Bogan, at 27. Nevertheless, the court held that a requirement that a tortfeasor's liability coverage be exhausted before an insured is entitled to underinsured motorist coverage is consistent with R.C. 3937.18 and a valid precondition to coverage. Id. at 28. In wrongful death actions, the personal representative has the authority to enter into a settlement with the tortfeasor subject to court approval. R.C. 2125.02(C). The personal representative's actions in pursuing settlement are presumed to be made on behalf of the statutory beneficiaries, which in this case included appellant. See Weiker, at 184. It follows that the wrongful death settlement was, in fact, among appellant, the other statutory beneficiaries, and the tortfeasor's insured. By failing to even approach exhaustion of the tortfeasor's liability limits, appellant, through the personal representative, failed to satisfy a valid precondition to coverage. Bogan, at 28. Because the exhaustion clause is a threshold requirement, and not a barrier to uninsured motorist coverage, we find that appellant's argument is not well-taken. The second assignment of error is overruled.
Based on the foregoing, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
DESHLER and KENNEDY, JJ., concur.