OPINION
{¶ 1} Appellant Westfield Insurance Company [hereinafter Westfield] appeals from the October 18, 2002, Judgment Entry of the Stark County Court of Common Pleas which granted appellee Vaneta Lalli's Motion for Summary Judgment and denied Westfield's Motion for Summary Judgment.
 STATEMENT OF THE FACTS AND CASE {¶ 2} This lawsuit is the result of an accident that occurred on January 7, 1997. At the time of the accident, Keith and Fannie Welsh resided with David and Cathleen Welsh, Keith Welsh's parents. Keith, Fannie and Cathleen were employees of Alliance Community Hospital. The accident occurred when Fannie Welsh was driving home from work, in an automobile owned by her husband, Keith Welsh. Angela Welsh, Fannie Welsh's daughter, was also a passenger in the vehicle. The accident was the result of the negligence of Thomas Sherwood. Following the accident, Fannie Welsh prematurely gave birth to Eleni Welsh. Eleni died a few hours after delivery.
 {¶ 3} Mr. Sherwood, the tortfeasor, had automobile liability coverage with limits of $100,000.00 per person and $300,000.00 per accident. Keith Welsh, as the administrator of the Estate of Eleni Welsh, settled with the tortfeasor and his insurer after reaching a settlement with the insurer for the liability limits of $100,000.00. The Stark County Probate Court divided this settlement among Keith and Fannie Welsh, the parents of Eleni Welsh, and Cathleen and David Welsh, the paternal grandparents of Eleni Welsh.
 {¶ 4} On June 22, 2001, plaintiffs filed a declaratory judgment action, in the Stark County Court of Common Pleas, seeking coverage, under nine policies, pursuant to R.C. 3937.18 and the Ohio Supreme Court's decision in Scott-Pontzer v. Liberty Mut. Fire Ins. Co.,85 Ohio St.3d 660, 1999-Ohio-292, 710 N.E.2d 1116. Alliance Community Hospital had the following policies in effect on the date of the accident: (1) a business auto policy providing UM/UIM coverage issued by Indiana; (2) a commercial general liability policy containing a non-owned and hired auto endorsement issued by OHIC Insurance Company; and (3) an umbrella policy issued by OHIC. Only plaintiffs Keith, Fannie, Cathleen and David Welsh, in their individual capacities, and the Estate of Eleni Welsh sought damages under Indiana's policy.
 {¶ 5} David Welsh was employed by R. Kurtzman on the date of the accident. R. Kurtzman had the following policies in effect issued by The Insurance Company of the State of Pennsylvania ("ISOP"): (1) a commercial automobile policy; and (2) a commercial general policy.
 {¶ 6} Veneta Lalli [hereinafter appellee], the maternal grandmother of Eleni Welsh, was employed at Coastal Pet Products, Inc., ("Coastal Pet") on the date of the accident. Coastal Pet had the following policies in effect issued by Westfield: (1) a business automobile policy providing UM/UIM coverage; (2) a commercial general liability policy; and (3) a commercial umbrella policy. Veneta Lalli also sought UIM benefits under her personal auto policy issued by Allstate Insurance Company ("Allstate").
 {¶ 7} Finally, Fannie and David Welsh, as resident family members, also sought UIM coverage under the commercial automobile policy issued by Indiana to Alliance Community Hospital and an umbrella policy issued by OHIC to Alliance Community Hospital. In their complaint for declaratory judgment, plaintiffs further requested the trial court order the parties to binding arbitration to determine the issue of total damages.
 {¶ 8} Subsequently, all parties filed motions for summary judgment. As memorialized in a Judgment Entry filed on October 18, 2002, the trial court granted appellee's motion for summary judgment while denying ISOP, OHIC, Westfield, Indiana and Allstate's motions for summary judgment. The trial court also ordered all parties to binding arbitration to determine the issue of total damages. The trial court did not determine whether the policies must pay on a primary, excess or pro rata basis.
 {¶ 9} Indiana, OHIC[1], Westfield[2] and ISOP[3] all filed separate notices of appeal. The matter currently under consideration concerns the appeal filed by Westfield. Westfield raises the following assignments of error for our consideration:
 {¶ 10} "I. The Trial Court Erred When It Held That Veneta Lalli Was Entitled To Um/uim Coverage Under The Commercial General Liabiity Coverage Part Of The Westfield Policy Issued To Coastal Pet Products, Inc.
 {¶ 11} "II. The Trial Court Erred When It Held That Veneta Lalli Was Entitled To Um/uim Coverage Under The Commercial Auto Coverage Part Of The Westifled Policy Issued To Coastal Pet Products, Inc.
 {¶ 12} "III. The Trial Court Erred When It Held That Veneta Lalli Was Entitled To UM/UIM Coverage Under The Umbrealla Coverage Part Of The Westifled Policy Issued To Coastal Pet Products, Inc."
 I {¶ 13} In the first assignment of error, Westfield contends that the trial court erred when it held that appellee Veneta Lalli was entitled to UM/UIM coverage under the Westfield Commercial General Liability policy [hereinafter CGL] issued to appellee's employer, Coastal Pet Products. We agree.
 {¶ 14} The CGL contained the following provisions:
 {¶ 15} "2. Exclusions
 {¶ 16} "This insurance does not apply to:
* * *
 {¶ 17} "g. Aircraft, Auto or Watercraft
 {¶ 18} "`Bodily injury' or `property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, `auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and `loading or unloading.
 {¶ 19} "This exclusion does not apply to:
* * *
 {¶ 20} "3. Parking an `auto' on, or on the ways next to, premises you own or rent, provided the `auto is not owned by or rented or loaned to you or the insured.'
* * *
 {¶ 21} "5. `Bodily injury' or property damage arising out of the operation of any of the equipment listed in paragraph f(2) and (3) of the definition of mobile equipment.
 {¶ 22} "Mobile equipment is defined under the commercial general liability policy in Section V as follows:
 {¶ 23} "II. Mobile equipment means any of the following types of land motor vehicle, including any attached machinery or equipment.
* * *
 {¶ 24} "f. * * * However, self-propelled vehicles with the following types of permanently attached equipment are not `mobile equipment' but will be considered `autos.'
* * *
 {¶ 25} "(2) cherry pickers and similar devices * * *
 {¶ 26} "(3) Air compressors, pumps, and generators, including spraying, welding
 {¶ 27} "Under Section II, `Who is an Insured' section of the policy an insured is defined as follows:
 {¶ 28} "4. With respect to `mobile equipment' registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission.'"
 {¶ 29} These provisions are commonly referred to as a valet parking clause and a mobile equipment clause. The parties agree that this is a pre-House Bill 261 policy. This court has previously held that neither a valet parking provision nor a mobile equipment provision, in a pre-House Bill 261 case, renders a CGL into a motor vehicle policy. Fish v. OhioCas. Ins. Co. (Aug. 18, 2003), Stark App. No. 2003CA0036, 2003-Ohio-4381
(citing Heidt v. Federal Ins. Co. (April 7, 2003), Stark App. No. 2002CA00314, 2003-Ohio-1785). Therefore, Westfield was not required to offer UM/UIM coverage and no such coverage is created by operation of law for failing to offer such coverage.
 {¶ 30} Westfield's first assignment of error is sustained.
 II {¶ 31} In the second assignment of error, Westfield contends that the trial court erred when it found that appellee was entitled to UM/UIM coverage under the commercial auto coverage portion of the Westfield policy issued to Coastal Pet Products. First, Westfield argues that appellee is precluded from recovering under the policy because she failed to comply with notice and subrogation provisions of the Westfield policy. Second, Westfield contends that appellee is not legally entitled to recover under the policy because the statute of limitations in which appellee could have brought suit against the tortfeasor has expired. We disagree.
 {¶ 32} We will first address appellant's arguments concerning whether appellee is legally entitled to recover. The UM/UIM endorsement of the Westfield policy states as follows: "We will pay all sums the `insured' is legally entitled to recover as compensatory damages from the owner or driver of an `uninsured' motor vehicle' because of `bodily injury' sustained by the `insured' caused by an `accident'. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the `uninsured motor vehicle.'" Section A(1), Ohio Uninsured Motorists Coverage Endorsement.
 {¶ 33} Westfield maintains that appellee is not "legally entitled to recover" because the two-year limitations period contained in the wrongful death statute, R.C. 2125.02(D), expressly provides that "[a]n action for wrongful death shall be commenced within two years after the decedent's death." Appellee's wrongful death cause of action accrued on January 7, 1997, the date of Eleni Welsh's death. Appellee had until January 7, 1999, in which to file a wrongful death claim. However, appellee did not file this action until June 25, 2001, well beyond the time period in which an action for wrongful death could be brought.
 {¶ 34} In turn, appellee responds that the phrase "legally entitled to recover" has nothing to do with the time limitations for filing a wrongful death action against the tortfeasor. Instead, appellee contends that the phrase "legally entitled to recover" means that appellee is able to prove that the tortfeasor was at fault and as a result of the tortfeasor's negligence, she has been damaged. We agree.
 {¶ 35} While we recognize that some courts, including the Fourth District Court of Appeals in Hutchison v. Midwestern Indemn. Co. (Aug. 5, 1987), Ross App. No. 1352, and Hutchison v. Midwestern Indemn. Co. (March 2, 1989), Ross App. No. 1496, have held that an appellant who failed to bring a wrongful death action against the tortfeasor within the two year statute of limitations was no longer "legally entitled to recover damages" from the tortfeasor, we agree with the reasoning in OhioFarmers Ins. v. Binegar (Jan. 7, 1994), Montgomery App. No. 13906. InBinegar, the insurance company argued that Laurie Binegar, Administrator of the Estate of Delbert Binegar, was not entitled to UIM coverage since Binegar had failed to bring a wrongful death action against the tortfeasor within the two year time limit provided in the wrongful death statute. The trial court agreed and found that the Estate of Delbert Binegar was not legally entitled to collect from the insurance company since it had allowed the wrongful death claim against the tortfeasor to lapse due to the passage of time.
 {¶ 36} However, the Binegar Court reversed the trial court, holding, in relevant part, as follows: "We note that the 4th District Court of Appeals has construed the phrase `legally entitled to recover' to exclude an insured who fails to file a wrongful death action within the statutory period. Hutchinson v. State Automobile Mutual InsuranceCo. (August 5, 1987), Ross App. No. 1304, unreported; and Hutchinson v.Midwestern Indemnity Co. (August 5, 1987), Ross App. No. 1352, unreported.
 {¶ 37} "The policy requirement that an insured must be `legally entitled to recover damages' is reasonably susceptible of at least two interpretations: (1) that the insured's legal entitlement to recover damages against the tortfeasor is a condition of the accrual of a claim under the policy; or (2) the insured's legal entitlement to recover damages against the tortfeasor is a condition of the assertion of a claim under the policy. Under the former interpretation, Binegar was legally entitled to recover damages against the tortfeasor upon the decedent's death, so that at that point a claim accrued under the policy. Under the latter interpretation, Binegar could have asserted a claim under the policy immediately following the decedent's death, but lost the ability to assert a claim once it became too late to file a wrongful death action against the tortfeasor.
 {¶ 38} "Both interpretations are plausible. The first is more consistent with the basic concept of underinsured motorist coverage as a means of insuring the collectibility of liability against a tortfeasor in a motor vehicle accident. The second would be a way of providing the insurer with notice of a claim while there is still a possibility of recovering damages from the tortfeasor. However, the provision is not worded in language suggestive of a purpose of assuring notice.
 {¶ 39} "Where terms of an insurance contract are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured. Kingv. Nationwide Insurance Co. (1988), 35Ohio St.3d 208." Id. at 4. TheBinegar court held that the term "legally entitled to recover damages" was reasonably susceptible of more than one interpretation and that there was no language in the subject insurance policy clearly and unambiguously putting the insured on notice that it established a time limit within which to make a claim for UIM benefits. The court found that the language in the policy did not clearly and unambiguously reduce from fifteen years to two years[4] the time in which an action for UIM benefits under the contract at issue could be brought. See also Hatcher v. Grange Mut. Cas. Co. (Dec. 14, 1993), Franklin App. No. 93 AP-882.
 {¶ 40} Likewise, in the case sub judice, the subject insurance policies do not define the phrase "legally entitled to recover damages" and do not indicate when the insured must be "legally entitled to recover damages" from the tortfeasor. The policy "does not even contain a provision which purports to limit the time for bringing a claim for uninsured motorist coverage." See Hatcher, supra. at 3. ApplyingBinegar, we find that the policies, therefore, are ambiguous. Pursuant toKing, supra., such ambiguity must be construed in favor of appellants. Construing such ambiguity in appellee's favor, we find that appellee's legal entitlement to recover damages against the tortfeasor was a condition of the accrual of a claim under the insurance policies. Therefore, appellee was legally entitled to recover damages against the tortfeasor, upon Eleni's death, "so that at that point a claim accrued under the policy." See Binegar, supra. At such point in time, appellee was able to demonstrate the elements of her claim against the tortfeasor and was "legally entitled to recover." Based on the foregoing, we find that appellee is not barred from pursuing her UIM claims against Westfield even though a wrongful death action can no longer be prosecuted against the tortfeasor.
 {¶ 41} Westfield also argues that appellee is barred from recovery under the commercial auto liability policy because appellee failed to comply with notice and subrogation provisions in the policy. Since the trial court decided this case, the Ohio Supreme Court has issued guidance on the issues of notice and subrogation. In Ferrando v. Auto-OwnersMutual Insurance Co., 98 Ohio St.3d 186, 2002-Ohio-7217, 781 N.E.2d 927, the Ohio Supreme Court held as follows:
 {¶ 42} "When an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a prompt-notice provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice. An insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary.
 {¶ 43} "When an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a consent-to-settle or other subrogation-related provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the failure to protect its subrogation rights. An insured's breach of such a provision is presumed prejudicial to the insurer absent evidence to the contrary. (Bogan v. Progressive Cas. Ins. Co. (1998) 6 Ohio St.3d 22,521 N.E.2d 447, paragraph four of the syllabus, overruled in part.)"Ferrando, supra., paragraphs one and two of syllabus.
 {¶ 44} After setting forth the above standards, the Ferrando
Court articulated a two-step approach for determining whether the prompt notice and subrogation-related provisions were breached, and if so, whether the breach resulted in prejudice to the extent that uninsured/underinsured coverage is then forfeited.
 {¶ 45} "The two-step approach in late-notice cases requires that the court first determine whether the insured's notice was timely. This determination is based on asking whether the UIM insurer received notice `within a reasonable time in light of all the surrounding facts and circumstances.'" Ruby, syllabus. If the insurer did receive notice within a reasonable time, the notice inquiry is at an end, the notice provision was not breached, and UIM coverage is not precluded. If the insurer did not receive reasonable notice, the next step is to inquire whether the insurer was prejudiced. Unreasonable notice gives rise to a presumption of prejudice to the insurer, which the insured bears the burden of presenting evidence to rebut.
 {¶ 46} "In cases involving the alleged breach of a consent-to-settle or other subrogation-related clause, the first step is to determine whether the provision actually was breached. If it was not, the inquiry is at an end, and UIM coverage must be provided. Also, if the insurer failed to respond within a reasonable time to a request for consent to the settlement offer, or unjustifiably withheld consent, the release will not preclude recovery under the UIM policy, and the subrogation clause will be disregarded. McDonald, paragraphs two and three of the syllabus; Fulmer, paragraph one of the syllabus. If the consent-to-settle or other subrogation-related clause was breached, the second step is to determine whether the UIM insurer was prejudiced. If a breach occurred, a presumption of prejudice to the insurer arises, which the insured party bears the burden of presenting evidence to rebut."Ferrando, 98 Ohio St.3d at ¶ 90-91, 781 N.E.2d 927.
 {¶ 47} Because the trial court made its decision prior to the announcement of Ferrando, it did not have the benefit of the Supreme Court's guidance and the parties did not have full opportunity to present evidence and arguments corresponding to the factors and two-step approach presented in Ferrando. Therefore, the issues of notice and subrogation clauses are subject to remand to the trial court for review in light of the Ferrando decision.
 {¶ 48} However, before this matter is remanded, there is an issue that was decided by the trial court that needs to be addressed. Appellee contends that this court need not reach the Ferrando issue. Appellee argues that the notice and subrogation provisions do not apply to preclude UIM benefits for appellee per the Weiker v. Motorists MutualIns. Co., (1998), 82 Ohio St.3d 182, 694 N.E.2d 966, 1998-Ohio-373, decision. We agree, in part.
 {¶ 49} In Weiker, the issue before the Court was whether a wrongful death beneficiary was precluded from underinsured motorist coverage because of her failure to notify her insurer of a proposed wrongful death settlement. The Weiker Court stated that the inclusion of a subrogation clause in insurance contracts providing underinsured motorist coverage was a valid and enforceable precondition to the duty to provide such coverage. Weiker, 82 Ohio St.3d at 183. However, the Court found that the language of Weiker's personal policy specifically required notification of any "tentative settlement between the insured and the insurer of [the] vehicle." The Weiker court noted that the settlement agreement at issue was reached between the administrator of the decedent's Estate and the tortfeasor. The agreement was not between Weiker and the tortfeasor. The Court concluded that since Weiker, the insured, did not enter into a settlement agreement, she did not violate the explicit terms of the contract.
 {¶ 50} Weiker concerned the following specific subrogation language concerning a tentative settlement with the tortfeasor: "A person seeking Uninsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the insured and insurer." Weiker,82 Ohio St.3d at 182-184. The language in this policy concerning uninsured motorist coverage is similar to the subrogation language in Weiker. The policy sub judice states as follows:
 {¶ 51} "DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS is changed by adding the following: A person seeking Uninsured Motorist Coverage must also promptly notify us in writing of a tentative settlement between the `insured' and the insurer of the vehicle described in paragraph F.3.b. of the definition of `uninsured motor vehicle' and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in paragraph F.3.b. of the definition of `uninsured motor vehicle.' Section E(2)(v), Ohio Uninsured Motorists Coverage Endorsement.
In this case, appellee was not the fiduciary of Eleni Welsh's Estate and did not sign the release with the tortfeasor. Therefore, just as inWeiker, this clause does not bar recovery under the circumstances herein.[5]
However, another clause is at issue here. The Westfield policy contained the following notice clause:
 {¶ 52} 2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS
 {¶ 53} a. In the event of "accident", "claim", "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:
 {¶ 54} (1) How, when and where the "accident" or "loss" occurred;
 {¶ 55} (2) The insured's name and address; and
 {¶ 56} (3) To the extent possible, the names and address of any injured persons and witnesses." Section 4(A)(2)(a) — Business Auto Conditions.
 {¶ 57} Weiker did not concern a notice provision requiring prompt notice of the accident or loss. Therefore, Weiker is not applicable to this provision and we decline to extend its application.
 {¶ 58} Accordingly, this matter is remanded to the trial court to review the issue of notice, pursuant to Section 4(A)(2)(a) — Business Auto Conditions, in light of the Ferrando decision.
 {¶ 59} Westfield's second assignment of error is sustained in part, and overruled in part.
 III {¶ 60} In the third assignment of error, Westfield contends that the trial court erred when it held that appellee was entitled to UM/UIM coverage under the Umbrella Coverage Part of the Westfield policy issued to Costal Pet Products, Inc. In light of our holding in assignment of error II, we find this assignment of error to be premature.
 {¶ 61} Appellant argues that "since Veneta Lalli [appellee] is not entitled to UM/UIM coverage under the commercial general liability coverage part of the Westfield policy nor under the commercial auto coverage part of the Westfield policy, Veneta Lalli is likewise not entitled to coverage under the commercial umbrella coverage part of the Westfield policy since it is form following." Westfield's Merit Brief, pg. 9. However, while this court agrees with appellant that appellee is not entitled to UM/UIM coverage under the commercial general liability coverage portion of the policy, the question as to whether appellee is entitled to coverage under the commercial auto coverage part of the policy has been remanded. Therefore, any issue as to whether appellee is entitled to UM/UIM coverage under a form following commercial umbrella coverage part of the policy is premature.
 {¶ 62} Westfield's third assignment of error is sustained as premature and we vacate that portion of the trial court's judgment which found UM/UIM coverage available to appellee Veneta Lalli under the commercial umbrella policy.
 {¶ 63} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby reversed, in part, and vacated, in part. The matter is remanded for further proceedings consistent with law and this Opinion.
[1] Welsh v. Indiana, Case No. 2002CA00378
[2] Welsh v. Indiana, Case No. 2002CA00376
[3] Welsh v. Indiana, Case No. 2002CA00379.
[4] R.C. 2305.06 provides that an action upon a written contract shall be brought within fifteen years after the cause thereof accrued.
[5] Appellant also cites this Court to the following clause from the Ohio Uninsured Motorist Coverage Endorsement of the Westfield policy:
"C. Exclusions
"This insurance does not apply to:
"(1) Any claim settled without our consent. However, this exclusiondoes not apply to a settlement made with the insurer of a vehicledescribed in paragraph F.3.b. of the definition of `uninsured motorvehicle.'" (Emphasis added).
This clause is expressly inapplicable to the situation herein. The only settled claim at issue is the claim of the Estate of Eleni Welsh against the tortfeasor, and the tortfeasor's insurer. That settlement was made with the insurer of an "uninsured" vehicle as defined in Paragrpah F.3.b., Ohio Uninsured Motorist Coverage Endorsement. Therefore, this exclusion is inapplicable.