OPINION
Defendants-appellants Nationwide Mutual Insurance Company (Nationwide) and Colonial Insurance Company of Wisconsin (Colonial) appeal the decision of the Jefferson County Common Pleas Court granting summary judgment for plaintiffs-appellees Adam Grabits (Adam) and Arlene Thompson (Arlene). This court is asked to decide whether Adam and Arlene abrogated their insurance companies' subrogation rights in a wrongful death action, thereby eliminating their respective insurer's duty to compensate them pursuant to the uninsured/underinsured motorists (UM/UIM) provisions in their policies. Additionally, this court is asked to determine if the anti-stacking provisions in Adam and Arlene's respective policies prohibit them from receiving UM/UIM coverage. For the following reasons, the judgment of the trial court is hereby affirmed.
 STATEMENT OF THE FACTS
On April 20, 1997, Vincent Grabits (Vincent) was a passenger in an automobile driven by Brian Jack (Brian). Brian's car collided with an automobile driven by Kenneth Dagan (Kenneth). Vincent died as a result of injuries sustained in the accident.
Vincent was survived by: (1) Joseph Grabits, Sr. (Joseph), his father; (2) Arlene, his mother; (3) Adam, his brother, and (4) two other siblings, not a part of this appeal. Vincent lived with Joseph. Arlene and Adam lived in a separate household. Joseph applied to be the administrator of Vincent's estate. Arlene and Adam signed a form indicating that they waived their right to administer Vincent's estate. Joseph was appointed administrator.
While Brian was uninsured at the time of the accident, Kenneth was insured by an Allstate policy with liability limits of $12,500 per person and $25,000 per occurrence. Arlene and Adam had UM/UIM policies, Adam's was with Nationwide and Arlene's was with Colonial. On March 22, 1999, Adam and Arlene signed a form waiving wrongful death claims and consenting to a settlement. On March 31, 1999, the Harrison County Probate Court approved the settlement. On April 16, 1999, Arlene and Adam filed a complaint against Brian, Kenneth, Colonial, and Nationwide in the Jefferson County Common Pleas Court. They sought to recover damages from Brian and Kenneth for Vincent's wrongful death. On April 22, 1999, shortly after Adam and Arlene filed their complaint, Joseph, in his capacity as the administrator of Vincent's estate, released all claims against Kenneth for $6,875. All of the proceeds were distributed to Joseph. Subsequently, a claim was settled for $30,000 under another insurance policy. Again, all of the proceeds were distributed to Joseph.
With respect to Colonial and Nationwide, Arlene and Adam sought to recover the limits of their UM/UIM policies. Colonial and Nationwide filed a joint motion for summary judgment which was overruled by the trial court. Subsequently, the trial court entered a judgment in favor of Adam and against Nationwide in the amount of $25,000. It also entered a judgment in favor of Arlene and against Colonial in the amount of $15,000. This appeal followed.
 STANDARD OF REVIEW
An appellate court reviews a trial court's decision to grant summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102. Summary judgment is properly granted when: 1) no genuine issue as to any material fact exists; 2) the moving party is entitled to judgment as a matter of law; and 3) reasonable minds can only come to one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. Willis Day Warehousing Co. (1976),54 Ohio St.2d 64, 66. The evidence must be viewed in the light most favorable to the nonmoving party. Id.
 ASSIGNMENT OF ERROR NUMBER ONE
Colonial and Nationwide set forth six assignments of error on appeal. The first assignment of error alleges:
 "THE TRIAL COURT ERRED IN CONCLUDING THAT PLAINTIFFS' FAILURE TO GIVE NOTICE OF THE LOSS FOR OVER TWO YEARS WAS NEITHER UNREASONABLE NOR PREJUDICIAL TO NATIONWIDE AND COLONIAL."
Colonial and Nationwide contend that they first discovered that Arlene and Adam were seeking to recover under their policies upon service of the complaint, two years after the accident. They claim that this delay resulted in their inability to assert their subrogation rights against Kenneth, since Joseph, the administrator of the estate, settled and released Kenneth from further liability. Adam and Arlene aver that they could not have notified the insurance companies that they were pursuing a claim any sooner because, at the time of the accident, such claims were not thought to be viable.
Over the past two decades the UM/UIM statute has undergone changes. The changes in the statute were later reflected in the case law. A review of the law in this area is helpful in the explanation of why this court finds that the two year delay in notifying the insurance companies of the claim did not result in prejudice to the insurers.
In 1992, the Ohio Supreme Court held that under R.C. 3937.18, individuals could recover damages from their UM/UIM policies in a wrongful death action where the tortfeasor was underinsured. Sexton v.State Farm (1982), 69 Ohio St.2d 431, 437. The version of the statute in effect at the time of Sexton required all automobile insurance policies issued in this state to provide UIM coverage. That coverage was "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom." R.C. 3937.18 (1988 version). In 1994, however, the legislature amended R.C. 3937.18 with the enactment of Am.Sub.S.B. No. 20. The current version of R.C. 3937.18(A)(1) states that coverage is "for the protection of insureds thereunder who are legally entitled to recover from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, suffered by anyperson insured under the policy." (Emphasis added).
In 1999, this court, in line with most other districts, concluded that the amended language of the statute overruled Sexton, and thus permitted an insurance policy exclusion to limit coverage to bodily injury or death suffered by an insured. King v. Western Res. Mut. Cas. Co. et al. (Mar. 15, 1999), Monroe App. Nos. 805, 806 and 807, unreported; Spence v.National Mut. Ins. Co. et al. (June 30, 1999), Monroe App. Nos. 812, 803, 804, unreported. However in 1998, contrary to the decisions of other appellate districts, the Tenth District Court of Appeals held that R.C.3937.18 as amended by Am.Sub.S.B. No. 20 did not require an insured to sustain a bodily injury. Holcomb v. State Farm Ins. Cos. (Dec. 24, 1998), Franklin App. No. 98AP353, unreported. Instead, the Tenth District concluded that the insured need only suffer damage or loss in order to maintain a suit under Sexton. Id. This created a conflict between the appellate districts.
In 2000, the Ohio Supreme Court resolved the conflict. The court held that "R.C. 3937.18(A)(1), as amended by Am.Sub.S.B. No. 20, does not permit an insurer to limit uninsured motorist coverage in such a way that an insured must suffer bodily injury, sickness, or disease in order to recover damages from the insurer." Moore v. State Auto. Mut. Ins. Co. (2000), 88 Ohio St.3d 27, syllabus. It stated that a limitation in an insurance policy requiring that the insured suffer bodily injury in order to recover UM benefits is an attempt to provide lesser coverage than that which is mandated by law. Id. at 32-33.
Adam and Arlene contend that they filed their complaint shortly after learning about the result in Holcomb. Prior to that decision, there was no conflict among the appellate districts in this state. As such, they aver that they provided Colonial and Nationwide with notice of their claims in a timely fashion. Colonial and Nationwide contend notice was not given in a timely fashion. They maintain that the decision in Moore
demonstrates that claims have been viable all along.
Arlene's policy with Colonial provided that if she was making a claim pursuant to her UM/UIM coverage, she was to provide Colonial with written proof of her claim "as soon as possible." Likewise, Adam's policy required him to submit to Nationwide written proof of a claim "as soon as practicable." Proper notice is a condition precedent to insurance coverage. Walker v. Buck (1993), 86 Ohio App.3d 846, 849. Policy provisions requiring notice "as soon as possible" or "as soon as practicable" have been interpreted to mean "notice within a reasonable time in light of the surrounding facts and circumstances." Ormet PrimaryAluminum Corp. v. Employers Ins. of Wausau (2000), 88 Ohio St.3d 292,303. The question of whether the insured met the notice requirement is generally a question for the trier-of-fact. Id. at 300. However, an unexcused, significant delay may be unreasonable as a matter of law. Id. Furthermore, an unreasonable delay in giving notice of a claim may be presumed to prejudice the insurer absent evidence to the contrary. Rubyv. Midwestern Indemn. Co. (1988), 40 Ohio St.3d 159, 161.
In this case, the trial court found that the notice was not untimely given. For most of the period leading up to the filing of the complaint in this case, the law did not allow these types of suits. Once an appellate district created a conflict by allowing a Sexton claim, Arlene and Adam filed a complaint. Given the circumstances, Adam and Arlene did not engage in an unexcused, significant delay. As such, the determination of whether Adam and Arlene complied with the notice requirements of their respective policies was a question for the trial court. Ormet,88 Ohio St.3d at 292. This court will not reverse the trial court's determination absent an abuse of discretion. See Ohio Historical Soc. v. GeneralMaintenance Engineering Co. (1989), 65 Ohio App.3d 139, 147. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was arbitrary, unreasonable or unconscionable. Tracy v. Merrill-Dow Pharmaceuticals, Inc. (1991),58 Ohio St.3d 147, 152. A review of the record does not demonstrate that the trial court abused its discretion.
Furthermore, Adam and Arlene did not have a claim pursuant to their UM/UIM policies until the liability of the tortfeasors was resolved in the underlying action filed by the administrator. That action was not settled until March 31, 1999, two weeks prior to the filing of the complaint in this case. An automobile liability insurance policy will typically require exhaustion of the proceeds of a tortfeasor's policy before the right to payment of UM benefits will accrue. Ross v. FarmersInsurance (1998), 82 Ohio St.3d 281, 287. Therefore, notice was provided shortly after the claim arose.
Given the nature of the case and the surrounding circumstances, Nationwide and Colonial's first assignment of error lacks merit.
 ASSIGNMENTS OF ERROR NUMBERS TWO THROUGH FOUR
Assignments of error numbers two through four have a common basis in law and fact and will, therefore, be discussed together. They respectively allege:
 "THE TRIAL COURT ERRED IN CONCLUDING THAT THE ADMINISTRATOR'S SETTLEMENT WITH DAGAN DID NOT PREJUDICE NATIONWIDE'S AND COLONIAL'S SUBROGATION RIGHTS."
 "THE TRIAL COURT ERRED WHEN IT HELD THAT THE DESTRUCTION OF THE INSURERS' SUBROGATION RIGHTS AGAINST DAGAN WAS NOT PREJUDICIAL SINCE THEY HAD BEEN PRESERVED AGAINST JACK."
 "THE TRIAL COURT ERRED IN HOLDING THAT THE PLAINTIFFS DID NOT PARTICIPATE OR ACQUIESCE IN THE DESTRUCTION OF THEIR INSURER'S SUBROGATION RIGHTS BY EXPRESSLY AND VOLUNTARILY WAIVING THEIR RIGHT TO ADMINISTER OR CO-ADMINISTER THE DECEDENT'S ESTATE AND BY EXPRESSLY CONSENTING TO AND APPROVING THE SETTLEMENT WITH DAGAN."
Colonial and Nationwide contend that Adam and Arlene participated in the destruction of their subrogation[1] rights against Kenneth. They note that Adam and Arlene signed a consent form so that the administrator could settle the claim against Kenneth and release him from further liability. They also contend that Adam and Arlene waived their right to be appointed administrator of Vincent's estate and, thus, could not actively protect the insurers' rights of subrogation.
 A. RELEASE AND SETTLEMENT
The language in both insurance policies imposes a duty upon Adam and Arlene to preserve the subrogation rights of their respective insurance companies. Arlene's policy required her to "promptly notify [Colonial] of a tentative settlement between the insured person and the insurer of theunderinsured motor vehicle." (Emphasis original). Adam's policy indicated that he was required to "obtain [Nationwide's] written consent to: (1) settle any legal action brought against any liable party; or (2) release any liable party."
Adam and Arlene signed a consent to settlement on March 22, 1999. Neither Adam nor Arlene informed their respective insurance companies that they signed the consent to settlement. Adam and Arlene filed their claims against Nationwide and Colonial on April 16, 1999. The same day the complaint was served upon Colonial, and the day after Nationwide was served, Kenneth was released from further liability by the administrator, Joseph Grabits, Sr. The dismissal of a claim against one joint tortfeasor is prejudicial to an insurance company's subrogation rights, even if the subrogation rights against the other joint tortfeasor are preserved. Motorists Mut. Ins. Co. v. Nussbaum (1994),107 Ohio App.3d 562, 565.
However, despite the release and the settlement, Adam and Arlene did not destroy the subrogation rights of Nationwide and Colonial. The administrator, Joseph Grabits, Sr., released and settled the wrongful death claims. Pursuant to Ohio's wrongful death statute, R.C. 2125.02, "a personal representative [Joseph] may exclusively settle with the defendant [Kenneth] an amount to be paid. * * * [Joseph] does not need the consent of the beneficiaries [Adam or Arlene] prior to the settlement." Matz v.Erie-Lackawanna RR. Co. (1965), 2 Ohio App.2d 136. Therefore, Adam and Arlene did not, themselves, sign away their insurance companies' subrogation rights. They merely offered their consent for something that, even without it, the administrator could do nonetheless.
In Weiker, the Supreme Court noted that "[w]ords and phrases used in an insurance policy must be given their natural and commonly accepted meaning, where they in fact possess such meaning to the end that a reasonable interpretation of the insurance contract consists with the apparent object and plain intent of the parties may be determined."Weiker v. Motorists Mut. Ins. Co. (1998), 82 Ohio St.3d 182, 185. The language in both policies required the insured, Adam or Arlene, to notify the insurer, Colonial or Nationwide, if the insured were going to enter into a settlement. The language did not require the insured to notify the insurer if the administrator settled and released the tortfeasor. The insurer, having prepared the policy, must be prepared to accept any reasonable interpretation in favor of the insured. Id., citing Gomalkav. State Auto. Mut. Ins. Co. (1982), 70 Ohio St.2d 166, 167-68. As such, neither Adam nor Arlene violated the provisions of their insurance policies by not notifying their insurance companies of a settlement executed by the administrator.
Adam and Arlene further their argument by stating that this case is similar to the Weiker case. In Weiker, appellant's brother was killed by a negligent motorist. The administrator of the decedent's estate executed a settlement with the tortfeasor and released him from further liability. Weiker did not receive any proceeds from that settlement. She submitted a claim to her insurance company seeking UM/UIM benefits. Her insurance company denied coverage, claiming that she failed to notify it of the proposed settlement with the tortfeasor. A provision in Weiker's insurance policy required her to promptly notify her insurance company of a "tentative settlement between the insured and the insurer of [the] vehicle" so that it could preserve its subrogation rights. The Ohio Supreme Court stated that the specific terms of Weiker's policy required her to notify her insurance company of a tentative settlement between the insured and the tortfeasor. It reasoned that Weiker did not enter into a settlement agreement, and thus, did not violate the plain terms of the policy. Weiker, 82 Ohio St.3d at 185. The Court relied on Gibson v. StateFarm Mut. Auto. Ins. Co. (1997), 123 Ohio App.3d 216, 223, which stated, "[w]e decline to glean from these cases [cited by the insurance company] the blanket proposition that settlement by an insured's legal representation automatically disentitles the insured to underinsurance coverage irrespective of the actual terms of the contract."
Nationwide and Colonial claim that this case is not similar to Weiker, but instead resembles McDonald v. Republic-Franklin Ins. Co. (1989),45 Ohio St.3d 27, and Bogan v. Progressive Cas. Ins. Co. (1988),36 Ohio St.3d 22. In McDonald and Bogan the insured's own action of settling with the tortfeasor destroyed their insurance companies subrogation rights. The insurers claim that the case at bar is distinguishable from Weiker. Weiker, unlike Adam and Arlene, did not sign a consent form waving wrongful death claims and consenting to the settlement. Also, Weiker did not know about the settlement prior to it occurring. Despite these facts, we find that the case does not resembleMcDonald or Bogan as the insurers suggest. In the case at bar, the administrator, Joseph Grabits, Sr., executed the settlement and release. While Adam and Arlene signed a form consenting to the settlement and release, their signatures were not needed, as previously discussed. Therefore, Colonial and Nationwide's assertion that they were prejudiced by Adam and Arlene's signature on the release and settlement is unfounded.
 B. WAIVER OF THE RIGHT TO ADMINISTER VINCENT'S ESTATE
Colonial and Nationwide next argue that Adam and Arlene had an affirmative duty to protect any subrogation claims they may have had. They aver that Adam and Arlene should have sought to be named administrator of Vincent's estate.
R.C. 2113.06 provides that "[a]dministration of the estate of an intestate shall be granted to persons mentioned in this section, in the following order: (A) To the surviving spouse of the deceased, if resident of the state; (B) To one of the next of kin of the deceased, resident of the state." Vincent had no surviving spouse. Therefore, a next of kin was to be appointed administrator of his estate. "Next of kin" as used in R.C. 2113.06 means only those persons who are entitled to inherit all or some portion of the estate of the deceased. In re Kelley (1956),102 Ohio App. 518, 519. Pursuant to R.C. 2105.06(E), if an intestate has no spouse or children, his entire estate goes to his parents. Because Vincent had no spouse or children, his parents were entitled to receive his entire estate. As such, Adam was clearly not Vincent's "next of kin" for the purpose of selecting an administrator. Thus, signing a waiver of his right to administer the estate did not constitute a violation of the terms of his insurance policy.
Joseph and Arlene were the only ascertainable individuals qualified to administer Vincent's estate. Arlene's insurance policy provided that she was required to "take the necessary steps to preserve the legal right to recover from the entity or entities alleged to be legally responsible for the claimed injury." Colonial argues that this provision required Arlene to seek appointment as administrator of Vincent's estate. However, where the provisions of an insurance policy are uncertain, ambiguous or reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured. King v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, syllabus. The aforementioned provision is vague. It does not place an affirmative duty on Arlene to seek appointment as the administrator. As such, Colonial and Nationwide's second through fourth assignments of error lack merit.
 ASSIGNMENT OF ERROR NUMBER FIVE
Colonial and Nationwide's fifth assignment of error alleges:
 "THE TRIAL COURT ERRED IN FINDING THAT THE `ANTI-STACKING' PROVISIONS OF THE PLAINTIFFS' NATIONWIDE AND COLONIAL POLICIES DID NOT BAR THEM FROM RECEIVING UM/UIM COVERAGE FOR THE WRONGFUL DEATH OF VINCENT GRABITS."
Colonial and Nationwide note that the policies issued to Adam and Arlene contain anti-stacking provisions. Anti-stacking provisions are clauses in insurance policies that do not allow an insured individual to recover under his UM/UIM coverage if he recovers from another policy. InSavoie v. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500, 508, the Ohio Supreme Court held that "underinsured motorists who suffer from injuries caused by an automobile accident are entitled to collect up to the full limits of their underinsurance policy to the extent that their damages exceed the amounts which the tortfeasor's insurer has already paid to them." This rule allowed the "stacking" of benefits so that an injured person could receive compensation from a tortfeasor's insurance company and still recover the entire amount under their own underinsured motorist policy. Id.
As previously noted, however, the Ohio General Assembly amended R.C.3937.18. The amendment, which became effective October 20, 1994, provides that underinsurance is not excess insurance, and the policy holder is only entitled to recover an amount that she would receive if the tortfeasor was uninsured. Am.Sub.S.B. No. 20. Underinsured motorist policies in Ohio may thus prohibit stacking. Therefore, Colonial and Nationwide may set-off any benefits previously received by Adam and Arlene against the limits of their respective UM/UIM policies.
Adam's policy provided:
 "If there is other insurance: 1. For bodily injury suffered by an insured while occupying a motor vehicle other than your auto, we will pay the insured loss not covered by other insurance. However, this insurance will apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of the other insurance.* * *"
Arlene's policy contained a provision almost identical to Adam's. Colonial and Nationwide contend that Vincent was insured by a policy that provided UM/UIM coverage with limits of $25,000. They claim that both Adam and Arlene were entitled to recover under this policy. Because neither Adam nor Arlene's respective UM/UIM policies exceed this amount, Colonial and Nationwide claim that Adam and Arlene cannot benefit from their policies as it would violate the anti-stacking provisions.
Adam and Arlene contend that the anti-stacking provisions are not applicable here. First, they note that nothing in the record indicates that Vincent was covered by an insurance policy under which Adam and Arlene were entitled to recover. The only indication in the record that another insurance policy existed is a judgment entered by the Harrison County Probate Court approving the settlement and wrongful death and survival claims. That entry approved the settlement of $25,000 underinsured coverage and $5,000 medical payments, the proceeds of which went to Joseph. Colonial and Nationwide contend that this is sufficient evidence that Adam and Arlene were entitled to payment by another insurance policy.
Even if Colonial and Nationwide were correct in their assertion that another policy existed and was applicable, it does not affect Adam and Arlene's entitlement to UM/UIM coverage under their policies. The language of their respective policies does not exclude coverage under the circumstances. Adam's anti-stacking provision applies if "there is other insurance * * * for bodily injury suffered by an insured * * *." (Emphasis original). Arlene's anti-stacking provision provided, "if you
[Arlene] have other insurance: (1) For bodily injury suffered by aninsured while occupying a motor vehicle you do not own, we will pay the insured loss not covered by other insurance." (Emphasis original). The policies explained that this coverage would apply "only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of the other insurance."
Vincent was not insured under either Adam nor Arlene's policy. Additionally, neither Adam nor Arlene suffered bodily injury. Emotional injury is not a physical harm, sickness or disease and thus is not a bodily injury under the UM provisions of an automobile policy. Erie Ins.Co. v. Favor (1998), 129 Ohio App.3d 644; Bowmen v. Holcomb (1992),83 Ohio App.3d 216, 219. Therefore, the terms of the anti-stacking provisions do not operate to exclude coverage for Vincent's wrongful death. Colonial and Nationwide's fifth assignment of error lacks merit.
 ASSIGNMENT OF ERROR NUMBER SIX
Colonial and Nationwide's sixth assignment of error alleges:
 "THE TRIAL COURT ERRED IN ENTERING JUDGMENT AND AWARDING DAMAGES TO PLAINTIFFS SINCE IT SHOULD HAVE ENTERED SUMMARY JUDGMENT FOR NATIONWIDE AND COLONIAL."
Nationwide and Colonial argue that, based on their previous five assignments of error, the trial court improperly sustained the motion for summary judgment filed by Adam and Arlene, and awarding them damages. Given the aforementioned discussion concerning the previous five assignments of error, this assignment of error lacks merit.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Waite, J., concurs.
DeGenaro, J., concurs.
[1] "The substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor." Black's Law Dictionary (7 Ed. Rev. 1999) 1440.