OPINION
Plaintiffs-appellants, Estate of Houser, et al. ("the appellants"), appeal from a decision of the Auglaize County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Motorists Insurance Companies, et al. For the reasons that follow, we affirm the decision of the trial court.
The pertinent facts and procedural history are as follows. On the 20th of October, 1998, David L. Houser and his co-worker, Jason L. Stansberry, completed a day's work at Burden Sawmill, Inc., and left to go drinking at the Ocean Toad II bar in Waynesfield, Ohio. Houser was 20 years old, and Stansberry was 24. Upon leaving the bar, Houser and Stansberry drove through Fan's Pizza, a drive-through carryout, and purchased an additional six-pack of beer. Shortly thereafter, while westbound on Buckland-Holden Road, Houser was killed while riding in Stansberry's auto. It appears that Stansberry lost control of his car, drove it into a ditch, and flipped the vehicle, killing Houser. Stansberry's blood alcohol content at the time of the crash exceeded .14, and he was ultimately convicted of vehicular homicide as a result of his actions.
On March 25, 1999, the appellants settled the case with Stansberry and his insurance carrier, American Select Insurance Company ("ASIC"). After the settlement, the appellants received a check from ASIC in the amount of $13,500.00, representing $12,500.00 in liability coverage and an additional $1,000.00 in medical payments coverage. Pursuant to the Probate Court's entry, these funds were distributed for funeral expenses, attorneys' fees, and payments to the appellants.
On October 18, 2000, the Estate of David Houser, by and through its administrator, Stephen Houser, filed a complaint against numerous defendants including the commercial insurers of Burden Sawmill, Inc. and Trim Trends, Inc. The complaint alleged that under applicable Ohio case law precedent, including Scott-Pontzer v. Liberty Mutual Fire Ins.Co.,[1] decedent and plaintiffs possessed a proper underinsured motorists claim against the aforementioned parties. At the time of the accident, Burden Sawmill, Inc. and Dan Burden, the majority shareholder of Burden Sawmill, Inc., were parties to a commercial insurance contract with Motorists Mutual Insurance Company ("Motorists Mutual" or "MMIC"), pursuant to the terms of policy number 33.157197-50E. The MMIC policy included provisions for uninsured/underinsured motorist coverage ("UIM coverage") and commercial umbrella coverage. Appellees, Hartford Fire Insurance Company and Hartford Specialty Insurance Company (collectively referred to as "Hartford"), provided automobile and general liability insurance to Trim Trends, Inc., a business that employed Stephen Houser, the father of the decedent.
Appellees MMIC and Hartford filed motions for summary judgment on April 27, 2001. That same day, the appellants filed a motion for partial summary judgment. On May 24, 2001, the trial court granted the appellees' motions for summary judgment and denied the plaintiffs' motion. All other pending claims were dismissed on December 13, 2001.
The appellants now appeal asserting the following two assignments of error:
ASSIGNMENT OF ERROR NO. I
 "The trial court erred in granting Defendants Hartford Fire Insurance Co., Hartford Specialty Insurance Co. and Motorists Mutual Insurance Co.'s Motions for Summary Judgment."
 ASSIGNMENT OF ERROR NO. II "The trial court erred in denying Plaintiffs' Motion for Partial Summary Judgment against Defendants Motorists Insurance Co., Hartford Insurance Co. and Hartford Specialty Insurance Co."
 Standard of Review
Our analysis of an appeal from summary judgment is conducted under a de novo standard of review.[2] In Horton v. Harwick Chem Corp.,[3] the Ohio Supreme Court held that summary judgment is proper "when looking at the evidence as a whole, (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party."[4] The movant bears the initial burden to inform the trial court of the basis for the motion, identifying portions of the record, including the pleadings and discovery, which demonstrate the absence of a genuine issue of material fact.[5] Once the movant has satisfied this burden, the nonmovant must set forth specific facts demonstrating that a genuine issue of fact indeed exists for trial.[6]
The outcome of this case depends upon the interpretation of the terms of the various insurance contracts at issue. It is well settled that an insurance policy is a contract and the relationship between the insured and the insurer is contractual in nature.[7] It is also well settled that "[c]ontracts are to be interpreted so as to carry out the intent of the parties, as the intent is evidenced by contractual language."[8]
Insurance coverage is determined by reasonably construing the contract "in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed."[9]
"[W]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured."[10] However, "where the provisions of an insurance policy are clear and unambiguous, courts may not indulge themselves in enlarging the contract by implication in order to embrace an object distinct from that contemplated by the parties[.]"[11]
 Discussion
The Motorists Mutual Policy
The appellants assert that, as to MMIC, this case is governed byScott-Pontzer[12] and its progeny.[13] In Scott-Pontzer, the plaintiff asserted a right to UIM coverage under her husband's employer's commercial automobile liability policy with Liberty Mutual Fire Insurance Company ("Liberty Fire") and separate "umbrella/excess" insurance policy with Liberty Mutual Insurance Company after her husband had died in an automobile accident.[14] For purposes of comparison with the present case, we will focus on the Ohio Supreme Court's analysis of the Liberty Fire policy. The Business Auto Coverage Form of the Liberty Fire policy, which contained an Ohio uninsured motorist form, defined the insured as "you" and "if you are an individual, any family member."[15]
The appellee, Liberty Fire, argued that "you" referred only to the named insured, the employer Superior Dairy, not to Superior Dairy's employees.[16] However, the Court found the term "you" to be ambiguous, stating that "[i]t would be nonsensical to limit protection solely to the corporate entity, since a corporation itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle."[17] Therefore, the Court "construed the language most favorably to the insured" and found that the plaintiff's husband was an insured under his employer's policy.[18]
After concluding that the plaintiff's husband was an insured, the Court turned to the question of whether he was entitled to coverage even though he was killed while on personal time.[19] The Court noted that no language within the Liberty Fire policy made coverage contingent upon the employee acting within the scope of employment.[20] Therefore, the Court held that in the absence of contractual language restricting coverage to employees who were acting within the scope of their employment, no such restriction would be read into the policy.[21]
Accordingly, the plaintiff was entitled to UIM benefits under the Liberty Fire policy.
In the case at bar, the appellants assert that the MMIC policy is similar to the Liberty Fire policy in Scott-Pontzer and that this Court should find that David Houser is entitled to UIM benefits thereunder. The language in the MMIC business auto coverage form bears some similarity to the Liberty Fire policy. Just as in the Liberty Fire policy, the MMIC Business Auto Coverage Form states that "[t]hroughout this policy the words `you' and `your' refer to the [n]amed [i]nsured shown in the [d]eclarations." However, here the named insureds are Burden Sawmill, Inc. and Dan Burden, individually, which creates a discrepancy with Scott-Pontzer where the only named insured was a corporation. Both policies also contain an Ohio UIM coverage form, as mandated by R.C. 3937.18. The MMIC policy defines an "insured" for purposes of UIM coverage as follows:
"Who Is An Insured
"A. You.
"B. If you are an individual, any "family member."
 "C. Your employees while occupying a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.
 "D. Anyone else, who is not a named insured or an insured family member for uninsured motorists coverage under another policy, "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction."
In Scott-Pontzer, the Liberty Fire definition of who is an insured made no reference to employees.
The appellants assert that the term "you" in paragraph one is ambiguous and refers to Burden Sawmill's employees, thus keeping in line with the Ohio Supreme Court's interpretation of the Liberty Fire policy inScott-Pontzer. The named insured of the Liberty Fire policy inScott-Pontzer was only the corporation Superior Dairy, and the Court found that "it would be reasonable to conclude that `you,' while referring to Superior Dairy, also includes Superior's employees, since a corporation can act only by and through real live persons."[22]
However, the named insured in the MMIC policy was not just the corporation, Burden Sawmill, Inc. Its majority shareholder, Dan Burden, was also a named insured. There is no ambiguity with the words "you" and "your" referring to Dan Burden. Nor is there ambiguity with the words "you" and "your" referring to Burden Sawmill, Inc., and not its employees. Inferring that the terms "you" and "your" refer to Burden Sawmill's employees would enlarge the meaning of the terms beyond that contemplated by the parties. It would also be unnecessary. Employees are clearly covered under paragraph three of the UIM form.
Having determined that the MMIC UIM policy provides coverage for employees, we now ask when that coverage arises. The MMIC Business Auto Coverage Form (CA 00 01 12 93) describes the different classifications of autos which are covered, the relevant provisions of which are as follows:
"2 = OWNED "AUTOS" ONLY. Only those "autos" you own * * *.
 "8 = HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow from any of your employees or partners or members of their households.
 "9 = NON-OWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your employees or partners or members of their households but only while used in your business or your personal affairs."
The Business Auto Coverage Form Declarations Page (CA 7000 (04-96)) then provides the schedule of those autos which are covered. The Coverage Form states that there is liability coverage for autos "2," "8," and "9" above. The policy then declares that UIM coverage is available only for autos meeting the description under "2", but not "8" or "9," above. Thus, a plain reading of the policy's terms confines UIM coverage only to those employees occupying autos owned by Dan Burden or Burden Sawmill. Houser was riding in Stansberry's auto, not his employer's. We, accordingly, find that Houser did not occupy a covered auto.
Our analysis is not quite at an end, for Houser could also be covered under the MMIC policy's commercial umbrella endorsement. Before beginning our analysis, we note another difference between the present case and Scott-Pontzer. Unlike the Liberty Mutual umbrella policy inScott-Pontzer, the commercial umbrella endorsement here is part of the same MMIC policy that provides UIM coverage. Whereas, the Liberty Mutual umbrella policy was separate and independent from the Liberty Fire policy which did contain a UIM coverage form. Therefore, the Ohio Supreme Court, pursuant to R.C. 3937.18, found that UIM coverage was implied by law to be a part of the umbrella policy. The Court also found that any restrictions in the Liberty Mutual policy applied only to excess liability coverage, not to the implied UIM coverage.
Here, because the MMIC commercial umbrella coverage is part of a larger policy which includes UIM coverage, we find that the Scott-Pontzer
analysis with respect to the Liberty Mutual umbrella policy is inapplicable. Any restrictions and definitions contained in the MMIC commercial umbrella form will apply to the UIM coverage also afforded by the same policy.
Section III of the MMIC commercial umbrella endorsement defines an "insured" as follows:
"Section III: Who is an Insured
 "Except as with respect to any "auto" owned, hired or used by you or on your behalf:
 "Any executive, officer, employee, director or stockholder while acting within the scope of his or her duties as such."
 In other words, the MMIC umbrella endorsement provides coverage to employees using their personal autos only while acting within the scope of his or her duties.
In Scott-Pontzer, the Ohio Supreme Court sought to avoid the situation, which it deemed "absurd," wherein an employee driving his own vehicle on company business would be precluded from the protections afforded by automobile liability insurance.[23] The Court reached this conclusion because Liberty Fire's attorney conceded that their position precluded coverage for employees driving their own vehicles during the scope of their employment.[24] In the present case, we find that the MMIC policy provides liability coverage to employees whether they are in company cars, or in their own cars, so long as they are engaged in the scope of their employment with Burden Sawmill. Further, we find that the policy provides UIM coverage to employees driving company-owned cars and, through the umbrella coverage form, to employees driving their own vehicles provided that they are acting within the parameters of their employment.
All parties to this case accept the fact that Houser and Stansberry were acting beyond the scope of their employment with Burden Sawmill, Inc. David Houser was killed while riding in an auto owned by a co-worker, not the company, in an event that took place hours after each had left work. And, although the appellant correctly notes that the Liberty Fire policy in Scott-Pontzer did not require an employee to be in the scope and course of employment in order to be covered, such is not the case here.[25]
Applying the clear language of the policy to the undisputed facts of this case, we find that a reasonable construction of the policy excludes UIM coverage. The intent of the parties is evident from the clear and unambiguous language of the policy. The policy provides UIM coverage for employees occupying autos owned by the company. The policy does not provide UIM coverage for employees using their personal autos, unless the employees are in the scope of their employment. We will not read into the contract a meaning not contemplated or placed therein by the parties. Accordingly, we find that David Houser is excluded from UIM coverage under the MMIC insurance contract provisions.
 The Hartford Policies
The appellants contend that the trial court erred in granting summary judgment to appellees Motorists Mutual and Hartford based upon the "consent" and "notice" provisions of their respective policies. Because we have already found that Houser is excluded from UIM coverage under the MMIC policy, we will only consider the strength of this argument with respect to the two Hartford policies.
As previously mentioned, the appellants settled their claim against the tortfeasor, Jason Stansberry, by accepting $13,500.00 from ASIC. Approval of the settlement was sought and obtained through the Mercer County Probate Court in Case No. 991060. The release signed by the appellants states, in pertinent part:
 "The Undersigned Steven Houser, As Administrator of the Estate of David Houser, Deceased (herein referred to as Releasor), * * * does hereby release and forever discharge Jason Stansberry (herein referred to as Releasee) * * * and all other persons, firms or corporations, who are and might be liable, of and from all claims of every kind, nature and description which Releasor ever had, now has or might have in the future against Releasee and such other persons, firms or corporations, on account of any and all damages, economic loss, noneconomic loss or injuries to person, property, past, present and future, known or unknown, either developed or undeveloped, connected with, resulting from or arising out of an accident which occurred on or about the 20th day of October 1998 on or near Buckland-Holden Road, Waynesfield, Ohio."
Hartford's first notice of this March 25, 1999 release was through this lawsuit which was initiated on October 18, 2000.
Hartford's motion for summary judgment was based upon the position that this release and settlement breached each of the insurance policies held by Trim Trends, Inc. The appellants' counter that, under the circumstances, prompt notice was given to Hartford and that for Hartford to preclude coverage for failure to provide prompt notice, they must show actual prejudice. We disagree.
Trim Trends holds two insurance policies with Hartford, an automobile insurance policy and an excess commercial general liability policy. The Hartford automobile insurance policy's UIM coverage form provides:
"C. EXCLUSIONS
"This insurance does not apply to any of the following:
"1. Any claim settled without our consent."
 Insurance contracts are to be construed with the same rules as other written contracts.[26] "The construction of written contracts and instruments of conveyance is a matter of law."[27] The words of an insurance policy that is clear and unambiguous on its face must be given their plain and ordinary meaning.[28]
If consent is required under a policy and is not obtained, no coverage exists.[29] In the present case, the policy clearly and unambiguously states that UIM insurance does not apply to claims settled without Hartford's consent. Therefore, we find that by settling and releasing their claim against Jason Stansberry, the appellants are not entitled to UIM benefits under the Hartford automobile insurance policy.
The appellants have also filed for UIM coverage under Trim Trends' excess commercial general liability policy ("excess commercial policy"). Unlike the Hartford automobile insurance policy, the Hartford excess commercial policy did not contain a UIM coverage form that defined insureds for purposes of UIM coverage. The policy does, however, provide auto liability coverage in certain circumstances, thus we find that UIM coverage results by operation of law.[30]
Under the Scott-Pontzer analysis, our inquiry would come to an end. We would find that any restriction in insurance coverage would apply solely to excess auto liability coverage and not to UIM coverage.[31]
However, Scott-Pontzer is predicated on the assumption that the insured is entitled to enforce the policy. Turning to the language of the Hartford excess commercial policy, we note the following provision:
 "14. Transfer of Rights of Recovery Against Others to Us.
"a. If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them."
 The appellants settled their claim against Jason Stansberry, and all others who might be liable, without notifying Hartford until nineteen months after the settlement had been reached. By settling the case with Stansberry without the notice and consent of Hartford, the appellants have put at risk their own chance of recovery under the policy's UIM benefits.
An insurance policy is a contract between the insurer and the insured.[32] "When a contract is once made, the law then in force defines the duties and rights of the parties under it."[33] Former R.C. 3937.18(E), the version of the law governing this agreement, provided that "the inclusion of a subrogation clause in insurance contracts providing underinsured motorist coverage is a valid and enforceable precondition to the duty to provide such coverage."[34]
Further, the Ohio Supreme Court has found that "by executing a release which precludes an insurer from exercising its subrogation rights, an insured materially breaches his insurance contract and discharges his insurer from its obligation to provide coverage."[35] The Court has also stated that "an insured who settles with and releases an underinsured tortfeasor before giving her insurance notice * * * is precluded from bringing an action against her insurer for underinsured motorist benefits."[36]
In the present case, we find that forcing Hartford to pay UIM coverage to the appellants, who have signed away any rights of subrogation, would be contrary to the underlying intent of former R.C. 3937.18(E) and would deprive Hartford of those rights for which it contracted. By releasing Jason Stansberry, the appellants destroyed Hartford's subrogation rights, and thus the appellants are not entitled to UIM coverage.
For the aforementioned reasons, the appellants' first assignment of error is not well-taken and is overruled. Because we find that the trial court did not err in granting the appellees' motions for summary judgment, we need not consider the appellants' second assignment of error.
Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
BRYANT and WALTERS, JJ., concur.
[1] 85 Ohio St.3d 660, 1999-Ohio-292.
[2] Ledyard v. Auto-Owners Mut. Ins. Co. (2000), 137 Ohio App.3d 501,505.
[3] 73 Ohio St.3d 679, 686-687, 1995-Ohio-286.
[4] See, also, Civ.R. 56(C).
[5] Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107.
[6] Id.
[7] Nationwide Mut. Ins. Co. v. Marsh (1984), 15 Ohio St.3d 107,109.
[8] Skivolocki v. E. Ohio Gas Co. (1974), 38 Ohio St.2d 244, paragraph one of the syllabus.
[9] King v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, 211;Dealers Dairy Products Co. v. Royal Ins. Co. (1960), 170 Ohio St. 336, paragraph one of the syllabus.
[10] King, 35 Ohio St.3d 208, syllabus.
[11] Gomolka v. State Auto Mut. Ins. Co. (1982), 70 Ohio St.2d 166,168 (citations omitted).
[12] 85 Ohio St.3d 660, 1999-Ohio-292.
[13] Bagnoli v. Northbrook Prop. Cas. Ins. Co., 86 Ohio St.3d 314,1999-Ohio-108 (Afforded UIM coverage under an employer's business autoinsurance policy to an employee injured in a bicycle-auto accident onpersonal time); Estate of Dillard v. Liberty Mut. Ins. Co.,86 Ohio St.3d 316, 1999-Ohio-177 (Definitions of "you" and "your" inemployer's UIM coverage covered employee walking across the street to hispersonal automobile after work had ended when he was struck and killed byan uninsured motorist); Ezawa v. Yasuda Fire Marine Ins. Co. of Am.,86 Ohio St.3d 557, 1999-Ohio-124 (Held that a corporate insurance policy must provide UIM coverage to an employee's minor son who was injured by a non-employee while riding in a non-covered vehicle and whose injuries were not related to the corporation's business).
[14] Scott-Pontzer, supra.
[15] Id. at 663-64.
[16] Id. at 664.
[17] Id.
[18] Id. at 665.
[19] Id. at 665-66.
[20] Id.
[21] Id.
[22] Id. at 664.
[23] Id.
[24] Id. at 666.
[25] Id.; Bagnoli, supra.
[26] See Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd. (1992),64 Ohio St.3d 657, 665.
[27] Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus.
[28] Johnston v. Akron Center for Reproductive Health, Inc. (1990),68 Ohio App.3d 655, 657.
[29] Cincinnati Ins. Co. v. Estate of McClain (March 8, 2002), Green App. No. 001-CA-96.
[30] Scott-Pontzer, 85 Ohio St.3d at 665, 1999-Ohio-292.
[31] Id. at 666.
[32] Ross v. Farmers Ins. Group, 82 Ohio St.3d 281, 287,1998-Ohio-381.
[33] Id., quoting Goodale v. Fennell (1875), 27 Ohio St. 426,432.
[34] Weiker v. Motorists Mut. Ins. Co., 82 Ohio St.3d 182, 184,1998-Ohio-373.
[35] Ruby v. Midwestern Indemnity Co. (1988), 40 Ohio St.3d 159,162.
[36] McDonald v. Republic-Franklin Ins. Co. (1989), 45 Ohio St.3d 27,31.